745 So.2d 194 (1999)
CONTRACT MANAGEMENT SERVICES, INC. OF TEXAS and Contract Management Services, Inc.
v.
STATE of Louisiana Through the DEPARTMENT OF LABOR, OFFICE OF EMPLOYMENT SECURITY.
No. 98 CA 2010.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
Writ Denied February 11, 2000.
*195 Jack E. Morris, Mark C. Morgan, Molaison, Colvin, Greenberg, Zelenka, Morris & Loeb, Gretna, Caren M. Morgan, Gretna, for Plaintiffs/Appellants, Contract Management Services, Inc., and Contract Management Services, Inc. of Texas.
Denise A. Nagel, Baton Rouge, for Defendants/Appellees, Louisiana Department of Labor, et al.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This is an appeal from a district court judgment upholding an administrative tax decision by the Louisiana Office of Employment Security that Carolyn W. McGary (McGary) was an employee of appellant, Contract Management Services, Inc. of Texas (CMSI-TX), and thus, her earnings were taxable for unemployment insurance purposes.

BACKGROUND
McGary is a registered nurse who resides in Georgia. In 1994, McGary responded to an open advertisement for various positions all over the country placed by CMSI-TX. In her response to the advertisement, McGary informed CMSI-TX of her areas of interest. CSMI-TX presented McGary with information on the available assignments that matched McGary's criteria. McGary identified the position in which she was most interested, a thirteen week, full-time position at Mental Health Services/MCLNO (Charity MHS) in New Orleans. Because Charity MHS was also interested in McGary, CMSI-TX arranged a telephone interview between McGary and Charity MHS, wherein the details of the job duties, employment hours, pay and benefits were discussed. At the conclusion of the interview, Charity MHS offered McGary the thirteen-week, full-time position and McGary accepted.
After the interview, CMSI-TX and McGary executed a contract setting forth the terms of McGary's employment at Charity MHS. Pursuant to the contract terms, McGary would start working at Charity MHS on November 21, 1994, and end on February 20, 1995. During her employment term, Charity MHS would supply Contract Management Services, Inc. of Louisiana[1] (CMSI-LA) with a report *196 of the number of hours worked by McGary each pay period. Based on the hours reported by Charity MHS, CMSI-LA would issue a paycheck to McGary. The contract provided for an hourly pay rate that included bonus pay for complying with attendance policies. An overtime hourly rate was also outlined in the contract. McGary was not entitled to paid sick leave or vacation time; however, the hospital could approve unpaid vacation.
The contract outlined that McGary was an independent contractor and had full and sole responsibility for payment of all taxes, and for securing and maintaining all insurance required for the performance of her nursing duties under the contract. The contract could only be terminated for cause, and under the clear terms of the contract, McGary was responsible for professional nonperformance damages to CMSI-TX if she willfully failed to complete the contract or to comply with its terms.
CMSI-TX provided McGary with some benefits through the contract. CMSI-TX would pay a one-time round-trip travel reimbursement at the rate of twenty cents per mile to a maximum of $400.00; however, if McGary broke the contract, she had to repay the reimbursement. CMSI-TX also provided McGary with housing for herself, although McGary had to pay utilities and she was not entitled to the housing once she completed her work under the contract. Finally, CMSI-TX agreed to mediate any disputes between McGary and Charity MHS.
Kathleen Thomas, the president of both CMSI-TX and CMSI-LA, signed the contract on behalf of CMSI-TX on November 7, and McGary signed the contract the next day. The language beneath McGary's signature line on the contract states: "Independent RN Contractor/date."

FACTS AND PROCEDURAL HISTORY
On March 21, 1995, the Georgia Department of Labor mailed a Notice of Claim Filed to CMSI[2] regarding a claim for unemployment insurance filed by McGary. In connection with her claim for unemployment insurance, McGary stated that she worked as a contract registered nurse in New Orleans, Louisiana, for CMSI from November 21, 1994, through February 20, 1995.
On March 29, 1995, CMSI responded that McGary was an independent contractor and not an employee of CMSI. On May 4, 1995, the Georgia Department of Labor began a liability investigation into McGary's claim for unemployment insurance. In connection with its investigation, the State of Georgia contacted the Louisiana Department of Labor for wage information regarding McGary.
In June 1995, Carolyn Gorham (Gorham), Employer Status Manager for the State of Louisiana, Department of Labor (the agency), sent a letter to CMSI-LA[3] notifying it that the agency would be conducting a liability investigation to determine if McGary was an independent contractor under LSA-R.S. 23:1472(12)E. Accordingly, Gorham enclosed an independent contractor questionnaire for CMSI-LA to complete and return to the agency for a determination of whether McGary was an independent contractor under the Louisiana Employment Security Law.
Paula Fager, executive vice-president of CMSI-LA, completed the questionnaire on June 27, 1995, and returned it to the agency. Additionally, CMSI sent Gorham copies of determinations by the Texas Employment Commission and the Internal *197 Revenue Service that the contract registered nurses were independent contractors and not employees of CMSI-TX.
On October 12, Gorham notified CMSI-LA in writing that "the individuals who perform services as Contract Registered Nurses do not meet the provisions of Section 1472(12) E. I., II., & III. of the Louisiana Employment Security Law ...." Thus, the agency determined that the individuals were employees, and wages earned by these individuals must be reported to Louisiana for unemployment insurance tax purposes. The letter notified CMSI-LA of its right to request an administrative tax hearing within 180 days. CMSI-LA and CMSI-TX timely requested an administrative tax hearing.
Prior to the original hearing date of March 18, 1996, CMSI sent the administrative law judge copies of determinations made by the Texas Employment Commission that the contract registered nurses were independent contractors and not employees of CMSI-TX. Thomas also notified the agency that McGary was under contract to CMSI-TX, which was a separate corporation from CMSI-LA. Apparently, until this notification, the agency's determination of the status of McGary was made with respect to CMSI-LA.
The March 18, 1996 hearing was rescheduled at the request of Thomas. Prior to the re-scheduled hearing date, Thomas sent a copy of the contract between CMSI-TX and McGary to the administrative law judge. Subsequently, on May 15, 1997, Thomas sent a letter to the administrative law judge outlining pertinent facts and enclosing copies of pertinent documents. In this letter, Thomas again noted that CMSI-TX and CMSI-LA were two separate corporations. Thomas explained that CMSI-LA provided accounting and bookkeeping services to CMSI-TX and other companies; whereas, CMSI-TX was in the business of locating personnel to fill requested positions at various companies and facilities. The company needing the personnel would pay CMSI-TX a fee for locating the personnel. In the May 1997 letter, Thomas also noted that McGary's contract was with CMSI-TX; CMSI-TX had no joint ownership with CMSI-LA; and CMSI's business was the provision of business management and consulting services by contract, whereas McGary's business was the provision of nursing services pursuant to the Nurse Practice Act.
On May 20, 1997, Thomas and Gorham participated in a telephone hearing with the administrative law judge. It is evident from the transcript of the hearing that the focus of the testimony was the role played by CMSI-TX with respect to McGary. On May 27, the administrative law judge issued a decision and found that McGary was an employee of CMSI-TX, not an independent contractor. CMSI-LA and CMSI-TX timely filed a petition for judicial review of the administrative tax decision. A hearing before the trial court was held on June 1, 1998, at the conclusion of which the trial court upheld the decision of the administrative law judge because he could not substitute his judgment in a judicial review for that of the administrative law judge unless he found "as a matter of fact that the [administrative law judge] made an error of law." This appeal by CMSI-LA and CMSI-TX followed the trial court's judgment.

EMPLOYEE OR INDEPENDENT CONTRACTOR STATUS OF MCGARY
The Louisiana Employment Security Law requires an employer to pay a compulsory contribution to the unemployment compensation fund. See LSA-R.S. 23:1471, et seq. This compulsory contribution can only be levied by the taxing authority under a statute that is clear and unambiguous and, strictly construed, leaves no question but that such tax is due and payable. Every doubt as to its application must be resolved in favor of the taxpayer and against the taxing power. In this respect, the taxing and the benefit sections of the act are considered to be *198 entirely separate and distinct. Where a tax statute is susceptive of more than one reasonable interpretation, the construction less onerous to the taxpayer must be adopted. Brown v. LaNasa, 244 La. 314, 320-21, 152 So.2d 33, 35-36 (1963).
In the present case, the agency sought to impose liability for contributions on CMSI-LA because it determined that McGary was an employee of CMSI-LA. It based this finding on its application of the test set forth in LSA-R.S. 23:1472(12)E. Thus, the issue before us is whether McGary was an employee of CMSI-TX[4] or an independent contractor. Louisiana Revised Statute 23:1472(12)E provides as follows:
Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, shall be deemed to be employment subject to this Chapter unless and until it is shown to the satisfaction of the administrator that[:]
I. such individual has been and will continue to be free from any control or direction over the performance of such services both under his contract and in fact; and
II. such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
III. such individual is customarily engaged in an independently established trade, occupation, profession or business[.]
[Emphasis added.]
Relying on this statute, the administrative law judge determined that McGary was an employee of CMSI-TX, and not an independent contractor. However, after a thorough review of the record, we find that the administrative law judge committed legal error in its application of the statutory test to the facts of the case. Accordingly, as the record before us is complete, we will conduct a de novo review to determine whether McGary was an employee of CMSI-TX or an independent contractor, and whether CMSI-TX was liable for contributions to the unemployment compensation fund based on McGary's wages for 1994 and 1995. See Ferrell v. Fireman's Fund Insurance Co., 94-1252, p. 7 (La.2/20/95), 650 So.2d 742, 747.
The administrative law judge made the following factual findings:
The company was incorporated in the State of Texas in 1994. They contract with various hospital and medical institutions to provide medical personnel for short term assignments. The claimant agreed to work at the Mental Health Center of New Orleans Charity Hospital from November 21, 1994, through February 20, 1995. She was to be paid a total of $17.00 per hour. However, the employer had the right to reduce her rate of pay by taking away her attendance bonus if she failed to meet all attendance policies. The employing unit paid the nurse twenty cents per mile to travel to the work location and also provided her with housing during the assignment. The nurse was responsible for paying all of her own taxes and providing all of her own insurance as well as certification and licenses. It was the responsibility of the employing unit to verify all references before referring the worker to the contracted hospital. If the hospital was dissatisfied with the worker's performance, the employing unit would mediate any dispute and would be the final authority on the outcome of the disputes. The nurse could be terminated for cause and also could be evicted from the provided housing if *199 she were terminated for cause or if she quit before the end of her contract.
The employing unit did not supervise the claimant in the actual performance of her duties. This supervision was provided by the contracted hospital and doctors working there. The work was performed at the contracted hospital. There is no indication that the nurse advertises her services to the general public as being in an independently established trade, occupation, business or profession.
The parties do not contest the validity of these factual findings. However, in applying the three-part test set out in LSA-R.S. 23:1472(12)E, the administrative law judge erred by overlooking pertinent language in the first part of the test, as well as by adding a requirement to the third part of the test. Also, the opinion of the administrative law judge makes it clear that he did not construe LSA-R.S. 23:1472(12)E strictly, nor did he resolve doubts in the application of this statute in favor of CMSI-TX and against the agency.

First Factor: Control
The first factor that must be shown is that the individual has been and will continue to be free from any control or direction over the performance of such services both under his contract and in fact. Despite the administrative law judge's express factual finding that CMSI-TX did not supervise McGary in the actual performance of her duties, the administrative law judge concluded that McGary was not free from control from CMSI-TX. The administrative law judge reasoned that CMSI-TX had control over McGary because it paid her an hourly rate based on reports received from McGary and the hospital; it could reduce her rate of pay for attendance violations; and it could evict her from housing if she were discharged for cause of if she quit before the end of her contract. However, these elements of control held by CMSI-TX with respect to McGary are not indicia of control or direction over the performance of the services that McGary was providing under the contractnursing services. The record is clear, and the administrative law judge expressly found that CMSI-TX did not control McGary's performance of her nursing services. This performance was controlled by Charity MHS. Thus, the first element of the three-part test to negate employee status was satisfied in this case.

Second Factor: Locale or Type of Service
The second factor that must be shown by CMSI-TX is that the services provided by McGary are either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed. In the present case, the record is clear, and the administrative law judge found that McGary's nursing services were performed at Charity MHS. Therefore, McGary's nursing services performed pursuant to the contract with CMSI-TX were performed outside of CMSI-TX's place of business. The second part of the test to negate employee status is also met in this case.

Third Factor: Customarily Engaged in Independently Established Profession
The final factor that must be shown is that the individual is customarily engaged in an independently established trade, occupation, profession or business. The administrative law judge erroneously injected an additional requirement that the individual must advertise her services to the general public to satisfy the third factor. Louisiana Revised Statute 23:1472(12)Elll does not require the advertisement of services to the general public. Instead, what must be shown to meet the third part of the test is that nursing is an independently established profession in which McGary was customarily engaged.
Nursing is clearly a profession. Webster's Ninth New Collegiate Dictionary *200 (1985) defines "nursing" as "the profession of a nurse." It defines "profession" as "a calling requiring specialized knowledge and often long and intensive academic preparation." The "[p]ractice of nursing" is also defined by Louisiana law as "the performance, with or without compensation, by an individual licensed by the board as a registered nurse, of functions requiring specialized knowledge and skills derived form the biological, physical, and behavioral sciences." LSA-R.S. 37:913(13). The record reveals that McGary was a licensed registered nurse.
We also find that nursing is an independently established profession. There are functions that can be performed by nurses that do not require supervision by physicians. For example, home health nurses can offer services independent from physician services. Moreover, we note that McGary was a nurse independent of her relationship with either CMSI-TX or Charity MHS. She became a nurse by obtaining her nursing degree, not by accepting a contract employment position with Charity MHS or any other medical institution or facility, and not by contracting with CMSI-TX for the purpose of locating contract employment positions.
Finally, McGary was customarily engaged in the profession of nursing. McGary chose to contract out her services as a nurse to entities on an "as needed" basis. She responded to an open advertisement run by CMSI-TX seeking nurses to fill a variety of positions at numerous different medical institutions. Accordingly, we find that the third part of the test was met and CMSI-TX successfully negated the employee status of McGary.[5]
Because we find that McGary was an independent contractor and not an employee of CMSI-TX, we also conclude that CMSI-TX was not liable for contributions to the unemployment compensation fund based upon McGary's earnings for 1994 and 1995.

CONCLUSION
For these reasons, the judgment of the trial court upholding the decision of the administrative law judge and dismissing CMSI-TX and CMSI-LA's petition for judicial review is reversed. Costs of this appeal in the amount of $871.20 are assessed to the agency.
REVERSED.
PETTIGREW, J., concurs and assigns reasons.
PETTIGREW, J., concurring.
I agree and join with the majority. In addition, I note that I have problems with the original lack of notice provided by the agency to CMSI-TX in June 1995 regarding the agency's decision to conduct a liability investigation to determine whether McGary was an independent contractor under LSA-R.S. 23:1472(12)E.
NOTES
[1] CMSI-LA is a separate corporation that contracted with CMSI-TX to provide accounting and bookkeeping services to CMSI-TX. CMSI-LA also appealed the trial court's dismissal of its petition for judicial review.
[2] The Georgia Notice of Claim Filed was directed to "CMSI", with no distinction between CMSI-LA and CMSI-TX. Thus, in referencing the Georgia claim, we will not distinguish between CMSI-LA and CMSI-TX.
[3] Based on the agency's employer account number referenced in the letter, it appears that this letter was directed to CMSI-LA.
[4] The agency concluded that McGary was an employee of CMSI-LA. The administrative law judge instead found that McGary was an employee of CMSI-TX, not of CMSI-LA. The agency did not appeal or otherwise protest any aspect of the administrative law judge's decision. Thus, the issue of whether McGary is an employee of CMSI-LA is not before us.
[5] As previously noted, the Internal Revenue Service and the Texas Employment Commission similarly determined that various registered nurses who worked through CMSI-TX were independent contractors and not employees of CMSI-TX. These determinations were made pursuant to requests for determinations of employment status for income tax and social security withholding purposes.